FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 13, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREI STEPHANOVICH BORGHERIU,<br><br>　　　　　　　　Defendant. | No. 4:22-CR-06040-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION *IN LIMINE*<br><br>**ECF No. 27** |

　　　Before the Court is the United States' Motion in Limine, ECF No. 27.  The Court conducted a pretrial conference and heard argument on this motion on August 28, 2023.  Assistant U.S. Attorneys Frieda Zimmerman and Tyler Tornabene and Law Clerk Katelyn Fessenden represented the United States.  Assistant Federal Defender Justin Lonergan represented Defendant, who was present and assisted by Interpreters Elena Bell and Elena McGivern.  This Order summarizes and supplements the Court's oral ruling on the motion.

ORDER – 1

The Court has reviewed the briefing, heard from counsel, and is fully informed. The Court grants the United States' Motion in Limine and limits the evidence and arguments Defendant may introduce in the manner described and for the reasons explained below.

**A. Summary of Arguments**

The United States seeks to exclude all evidence that is offered to show that the victim of the charged offenses—here, the Small Business Administration ("SBA"), (1) knew of, should have known of, or could have discovered Defendant's offense or (2) negligently, recklessly, or intentionally disregarded some or all of Defendant's false statements or overt acts. ECF No. 27 at 2-3. The United States anticipates that Defendant will introduce such evidence of "alleged[ly] poor administration of the [Economic Injury Disaster Loan ("EIDL")] program" to argue that Defendant lacked the requisite intent to defraud or that his false statements were not material. *Id.* at 3, 6. The United States argues that such evidence is inadmissible under Fed. R. Evid. 401, 402, and 403, and *United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017). *Id.* at 2-3.

In response, Defendant argues that evidence of the SBA's practices is relevant and proper evidence of the elements of intent and the existence of a criminal scheme, and that he is not intending to raise an excuse or justification defense based on victim negligence. ECF No. 33 at 2. Defendant asserts that

ORDER – 2

excluding such evidence would reduce the United States' burden of proving all elements of the offense and would deny him the constitutional right to put on a defense. *Id.* Defendant argues that *Lindsey* can be distinguished by its focus on one narrow issue—that a mortgage-fraud defendant may dispute the materiality of the fraudulent statements at issue through "evidence of the lending standards generally applied in the mortgage industry" but not by alleging that a particular lender was negligent. *Id.* at 3-4. Defendant also argues that *Lindsey* recognized that "lending standards" may be defined by the practices of a single lender where that lender "represents the entire market," as the federal government does for various federal loan programs. ECF No. 33 at 5-6.

The United States' reply raises one further ground for exclusion: that Defendant may argue that the EIDL program constitutes a "minimal" fraction of the aggregate number and value of the SBA's lending programs in order to solicit jury nullification. ECF No. 44 at 3. The United States points to a statement from Defendant's Motion to Dismiss the Forfeiture Claim, ECF No. 30 at 5, as indication that Defendant will make this argument at trial. ECF No. 44 at 3.

At the hearing on this motion, Mr. Tornabene clarified that the United States is asking the Court to limit how Defendant may challenge the element of materiality—only by presenting evidence on the standards of the broader business-

ORDER – 3

loan industry, not the narrower disaster-loan industry, and not through evidence suggesting the SBA was a negligent victim. ECF No. 55 at 64-66.

**B. Discussion**

Defendant is charged with two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of false, fictitious, or fraudulent claims, in violation of 18 U.S.C. § 287. ECF No. 1. "To convict a defendant of wire fraud, the jury must find beyond a reasonable doubt: '(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud.'" *Lindsey*, 850 F.3d at 1013 (quoting *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir 2013)). To find the existence of a scheme to defraud, "the jury must find that the defendant employed '*material* falsehoods.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 20 (1999)). "The element of materiality is evaluated under an objective test, in which [courts] must examine 'the intrinsic capabilities of the false statement itself, rather than the possibility'" it will actually attain the statement-maker's goal. *Id.* at 1014 (quoting *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008)).

In *Lindsey*, 850 F.3d at 1012, the defendant was charged with several counts of wire fraud, stemming from his false statements on several mortgage loan applications. The United States filed a motion in limine "to prevent Lindsey from introducing evidence of lender negligence," under the theory "that the lenders were

ORDER – 4

at fault for failing to verify the information in the fraudulent loan applications." *Id.* "The district court declined to rule on the issue" pending further "development of the evidence at trial." *Id.* However, the court "warned Lindsey's attorney to 'stay away' from the issue of lender negligence." *Id.* Defense counsel "[n]evertheless" made an opening statement portraying the relevant timeframe as "'a wild time' of mortgage lending," where "'there were mortgages being offered that had never been offered before and perhaps may never be offered again,'" and where loan applicants were not required to prove their claimed income and assets with documentation. *Id.* Thereafter, defense counsel cross-examined two witnesses about topics implicating lender negligence, although the court sustained the United States' objections to these questions, and made similar arguments in closing. *Id.* at 1013. The court instructed the jury that "loose lending practices do not constitute a defense to wire fraud, but the lending standards applied by the financial institutions that lent the money in this case are relevant to the question of materiality." *Id.* (quotation marks and alteration omitted). "The jury convicted Lindsey of all counts." *Id.* Lindsey argued on appeal that the court "prevented him from presenting a complete defense" by limiting him from "challenging the materiality of false statements" on a loan application that did not require applicants to provide records supporting their claimed income. *Id.* at 1014.

ORDER – 5

The Ninth Circuit joined five other Circuits in holding that "a victim's negligence is not a defense to wire fraud." *Id.* at 1015. The court further held that Lindsey could not challenge the materiality element by arguing that his mortgage lenders "might have intentionally disregarded [his] false statements," as materiality is evaluated using an objective standard. *Id.* at 1015-16. The court noted that the proper way to "disprove materiality" would be "through evidence of the lending standards generally applied in the mortgage industry[,]" provided that "defendants do not stray into evidence of the behavior of individual lenders . . . ." *Id.* at 1016.

The court distinguished Lindsey's circumstances from those in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016). *Id.* at 1016-17. In *Escobar*, the Supreme Court held that materiality, in a civil[1] prosecution under the False Claims Act, could be proven or disproven using evidence of the Government payor's individual behaviors. *Id.* at 1017. For example, materiality could be disproven through evidence that "the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated." *Id.* at 1017 (citing *Escobar*, 579 U.S. at 194-95). The Ninth Circuit noted "that the Federal Government in a [False Claims Act] case

---

[1] To be clear, materiality is not an element of 18 U.S.C. § 287 under the Ninth Circuit's interpretation. *United States v. Taylor*, 66 F.3d 254, 255 (9th Cir. 1995).

ORDER – 6

is in a far different position than is an individual lender in a mortgage fraud prosecution[]" because "the Federal Government . . . represents the entire market for issuing federal government contracts." *Id.*  In other words, where the Federal Government constitutes the "entire" industry for the type of claim or contract at issue, evidence of the Federal Government's specific behaviors is admissible to prove or disprove materiality.  *See id.*

Three principles from *Lindsey* bear on the instant motion.  First, Defendant may not introduce evidence that the SBA acted negligently or intentionally disregarded his statements to assert a defense to the pending charges.[2]  *See id.* at 1015.  Second, Defendant may seek to disprove the materiality element of wire fraud "through evidence of the lending standards generally applied" in that loan industry.  *See id.* at 1016.  Third, if the relevant loan industry is defined as an area where the Federal Government "represents the entire market," Defendant may

---

[2] Although *Lindsey* did not involve criminal False Claims Act charges, this principle seems equally applicable to all three charges in this case, even if the False Claim Act charge does not require proof of materiality.  "The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability" for committing that crime.  *See Lindsey*, 850 F.3d at 1015 (quoting *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000)).

ORDER – 7

1  introduce evidence of the Federal Government's lending standards to contest

2  materiality. *See id.* at 1017.

3  Therefore, the last issue remaining is to determine the proper definition of

4  the relevant loan industry. Defendant argues that the industry should be defined as

5  the "small business disaster lending" industry, in which the SBA "*is* essentially the

6  industry," such that evidence of the SBA's individual practices is admissible on the

7  issue of materiality. ECF No. 33 at 5. The United States contends that this is

8  "overly narrow" and should instead be defined as the general industry of business

9  loans. ECF No. 44 at 4. The United States further contends that "if the defense

10 has evidence of general lending standards in the context of business loans" that

11 statements like Defendant's would be considered immaterial, then "it should

12 proffer such evidence" for the Court to "determine whether it is admissible in line

13 with *Lindsey* and the Federal Rules of Evidence." ECF No. 44 at 4-5.

14 "[M]ateriality measures natural capacity to influence, not whether the

15 statement actually influenced any decision." *Id.* at 1017. The *Lindsey* court

16 further explained why materiality properly turns on industry standards:

> The way the entire market has historically treated a statement or requirement says a lot about that statement or requirement's natural capacity to influence a decision by market participants. But the way one market participant of many has previously treated a statement says little or nothing about that statement's inherent ability to affect decision making.

ORDER – 8

*Id.* The court considered that "an alternative possible rule would be to allow evidence of past behavior by individual lenders, but require a jury instruction that the evidence be considered only for the purpose of evaluating materiality, and not [the individual lender's] negligence, intentional disregard, or lack of reliance." *Id.* However, the court ultimately concluded that "[a] prophylactic rule against all evidence of individual lender behavior best avoids" the risk that such evidence would lead the jury to determine materiality using a subjective, actual-reliance standard. *Id.* at 1018.

Under the principles of *Lindsey*, if the SBA is considered "the entire market," then the way the SBA has historically treated statements like Defendant's "says a lot" about whether Defendant's statement was material. *See id.* Conversely, if the SBA is considered "one market participant of many" in a broader field of general business loans, then the way the SBA has previously treated statements like Defendant's "says little or nothing about that statement's inherent ability to affect decision making," and therefore says little or nothing about its materiality. *See id.*

The United States' proposed definition would portray the SBA as one market participant of many. However, this would affect both parties' ability to introduce evidence of materiality. The United States has noticed a single expert, Raymond Brown, who is anticipated to testify about the SBA's standards and

ORDER – 9

policies for EIDL loans. ECF No. 26 at 2-3. To qualify Mr. Brown as an expert, the United States indicates that Mr. Brown "has worked for the [SBA] in a capacity that involves **Disaster Loans** since 2006" and "has become knowledgeable regarding **Disaster Lending**." ECF No. 26 at 2 (emphases added). The United States does not contend that Mr. Brown is qualified to testify about whether Defendant's statements were objectively material under the standards of the general business loan industry. As a result, Mr. Brown's testimony about the SBA's individual lending practices would violate the "prophylactic rule" established in *Lindsey*. *See* 850 F.3d at 1018.

If the United States intends to offer evidence of the SBA's individual lending practices to prove materiality, then it cannot reasonably object when Defendant offers similar evidence to disprove materiality. It is reasonable to characterize the relevant industry here as one where the Federal Government represents the entire market, regardless of the adjectives used to label that market.[3]

---

[3] The *Lindsey* court interpreted *Escobar* to define the relevant industry as "federal government contracts," in which the Federal Government "represents the entire market." 850 F.3d at 1017. This suggests that the proper definition here would be the industry of "federal government loans," in which the Federal Government represents the entire market.

ORDER – 10

The Court will not prohibit Defendant from offering evidence on the SBA's lending practices to dispute materiality so long as Defendant offers it for that purpose—to show that the relevant industry did not consider statements like Defendant's to be material—and does not offer it to prove or argue a victim-negligence defense.

Accordingly, **IT IS HEREBY ORDERED:**

**1.** The United States' Motion in Limine, **ECF No. 27**, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

   **a.** Defendant shall not introduce evidence or argument that the SBA acted negligently, intentionally disregarded his statements, or otherwise did not actually rely on his statements.

   **b.** However, this Order does not prohibit Defendant from introducing evidence or argument that the SBA's lending practices reflect an industry standard that considers statements, like the statements charged here, to be immaterial.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** December 13, 2023.

ORDER – 11

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER – 12