Vanessa R. Waldref
United States Attorney
Jeremy J. Kelley
Frieda K. Zimmerman
Assistant United States Attorney
United States Attorney's Office
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: 509-835-6356

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES<br><br>Plaintiff,<br><br>v.<br><br>ANDREI S. BORGHERIU,<br><br>Defendant. | CASE NO. 4:22-cr-6040-SAB-1<br><br>UNITED STATES' RESPONSE TO MOTION TO DISMISS (ECF No. 114)<br><br>February 10, 2025 at 9:30 a.m.<br>Richland, WA- With Oral Argument |

The United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, Frieda K. Zimmerman and Jeremy J. Kelley, Assistant United States Attorneys, respectfully submits this response to Defendant's Motion to Dismiss (ECF No. 114). Defendant moves for dismissal of Counts One and Two of the Indictment, contending that the Indictment fails to allege deprivation of a traditional property interest. ECF No 114 at 3.[1] This

---

[1] When citing to ECF No. 114, the United States has used the ECF pagination at the top of the page.

UNITED STATES' RESPONSE TO MOTION TO DISMISS (ECF No. 114) - 1

motion should be denied for several reasons. First, it is untimely. Second, the Indictment alleges that the object of Defendant's scheme was to obtain money—a traditional property interest—from the SBA by means of materially false and fraudulent pretenses, representations, and promises. ECF No. 1 at 2.

## I. Background

The Indictment charges that Defendant lied to the SBA to obtain nearly half a million dollars in economic injury disaster loan (EIDL) proceeds when he falsely and fraudulently certified to the SBA, on his Loan Authorization and Agreement for the EIDL, that he would only use the EIDL proceeds solely as "working capital to alleviate economic injury." ECF No. 1 at 5. Based on the false representations made by Defendant, the SBA approved distribution of $499,900.00 in EIDL funding. ECF No. 1 at 4. However, after the SBA disbursed the proceeds to Defendant, he used almost all the money to instead buy a personal residence. ECF No. 1 at 4. At trial, the United States will prove beyond a reasonable doubt that Defendant knew he was lying to get money that he was not entitled to when he falsely certified, under penalty of perjury, that he would use the EIDL proceeds solely "as working capital to alleviate economic injury."

## II. Discussion

Fed.R.Crim.P. 12(b)(3)(B)(v) permits a defendant to move to dismiss an indictment on the grounds that the indictment fails to state an offense. Under the rule, courts may entertain motions that require them to answer only pure questions of law. *See, e.g., United States v. Shortt Acct. Corp.,* 785 F.2d 1448, 1452 (9th Cir. 1986); *United States v. Covington*, 395 U.S. 57, 60 (1969); *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir.1993) (motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact.").

Additionally, when ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). A

UNITED STATES' RESPONSE TO MOTION TO DISMISS (ECF No. 114) - 2

court "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Boren*, 278 F.3d at 914. A "motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence" and courts "should not consider evidence not appearing on the face of the indictment." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (internal quotations omitted). Courts ask only whether a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012).

An indictment is "sufficient if: (1) it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend; and (2) it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87 (1974)); *see also, Russell v. United States*, 369 U.S. 749, 763-764 (1962); Fed. R. Crim. P. 7(c). An indictment is generally sufficient if it sets forth the offense in the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offenses intended to be punished." *Hamling*, 418 U.S. at 117; s*ee also United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) ("The test of sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.") (internal citations and quotation marks omitted).

Here, Defendant moves to dismiss the Indictment under Rule 12, on the basis that it fails to state an offense.[2] ECF No. 114 at 5. Defendant's motion should be denied. First, it is untimely. Second, the Indictment alleges that the object of

---

[2] While Defendant's motion is titled a "Motion to Dismiss Indictment," Defense does not allege deficiencies in Count 3, charging Defendant with violation of 18 U.S.C. § 287. Thus, even if there was a basis to dismiss Counts 1 and 2, which there is not, Count 3 would still proceed to trial, as scheduled.

UNITED STATES' RESPONSE TO MOTION TO DISMISS (ECF No. 114) - 3

Defendant's scheme was to obtain money—a traditional property interest—from the SBA by means of materially false and fraudulent pretenses, representations, and promises.

**A.     Defendant's Motion is Untimely.**

Local Criminal Rule 12(c)(1) provides that absent good cause, "all defenses, objections, or requests pursuant to Fed. R. Crim. P. 12, which are capable of determination without the trial of the general issue, must be raised by pretrial motion and noticed for hearing on or before the deadline set by the assigned judge for hearing all pretrial motions." In this case, the last scheduling order allowing for pretrial motions was ECF No. 52, with a deadline for all pretrial motions of November 17, 2023. ECF No. 52 at 16. Several subsequent scheduling orders indicated that the deadline for pretrial motions had passed. *See*, ECF No. 68 at 15, ECF No. 80 at 16. The most recent scheduling order, ECF No. 109, provides deadlines for trial materials, but not pretrial motions. ECF No. 109 at 2.

The United States recognizes that this case has been rescheduled multiple times, and that on occasion case developments in continued cases may necessitate motions outside of the initial schedule. However, this motion is based on the allegations in the Indictment, which the Defense has had since September of 2022. *See*, ECF No. 10. Because this particular motion is based on nothing more than legal argument about the sufficiency of the Indictment, it could have been filed within the deadlines set by the Court, and as such the current filing is untimely.[3] However, for reasons discussed below, this motion fails on the merits as well.

---

[3] To the extent Defendant may contend that the Ninth Circuit's decision in *U.S. v. Millheiser*, 98 F. 4th 935 (9th Cir. 2024), upon which he relies, is an intervening reason for the untimely filing of this motion, that decision was issued on April 9, 2024.

**B.    The Indictment Alleges a Scheme to Obtain Money, a Traditional Property Interest.**

To establish a violation of 18 U.S.C. §1343, the United States must prove: (1) Defendant knowingly devised a scheme or plan to defraud for purposes of obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made as part of the scheme were material; (3) Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme. *United States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2020); *see also* 9th Cir. Pattern Jury Instruction 15.35.

Here, while acknowledging that the Indictment tracks the language of 18 U.S.C. §1343, ECF No. 114 at 5, the Defense argues that the Indictment fails to allege that Defendant intended to deprive the SBA of a traditional property interest, and that the interest asserted is actually "the right to control the use of the funds after it disbursed them." ECF No. 114 at 11. However, neither the language of the Indictment nor the relevant caselaw support this argument. In the text of the Indictment, the United States alleges that Defendant devised a "scheme to defraud the SBA, and to obtain money and property from the SBA by means of materially false and fraudulent pretenses, representations, and promises." ECF No. 1 at 3. It further specifies that as part of the scheme, Defendant sought to fraudulently obtain money from the EIDL program, and was successful in obtaining $500,000.00. ECF No. 1 at 4. Money is a "tangible, traditional property interest." *USA v. Miller*, 2023 WL 7346276, at *5 (N.D. Cal. Nov. 6, 2023). As such, the Indictment states a scheme to defraud in order to obtain money, which falls squarely in the required elements for violation of 18 U.S.C. §1343.

However, Defendant contends that the interest asserted by the United States is actually "the right to control the use of the funds after it disbursed them." ECF No. 114 at 11. In addition to reading language into the Indictment that is not present,

Defendant attempts to support this argument through various cases which are not analogous, as they involve schemes which do not allege a scheme for deprivation of money from the victim. *See United States v. Ciminelli*, 598 U.S. 306 (2023) (concluding that economic information is not a property interest for purposes of wire fraud); *Cleveland v. United States*, 531 U.S. 12 (2000) (concluding that state poker licenses are not a property interest for purposes of mail fraud); *McNally v. United States*, 483 U.S. 350 (1987) (concluding that state official agreeing with insurance company to continue relationship in exchange for sharing of commissions with specific insurance agencies, including one he controlled, did not violate mail fraud statute as scheme that did not result in monetary loss but defrauded the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly was not "property"). As these cases relate to property rights outside of the "traditional property rights," like money, none of these cases support Defendant's argument.

In fact, the argument that wire fraud convictions cannot be sustained in the context of EIDL funding because any harm that could have been suffered by the SBA is not to a "traditional property interest" has been raised and rejected by several district courts. *See United States v. Mansouri,* 2023 WL 8430239, at *3 (W.D.N.Y. Dec. 5, 2023) (denying the defendant's motion to dismiss indictment alleging that the defendant submitted multiple applications for loans under the Paycheck Protection Program and Economic Injury Disaster Loan program that included "materially false and fraudulent information, pretenses, representations, and promises," because "unlike the *Ciminelli* indictment, the indictment [in *Mansouri*] sa[id] nothing about depriving the lenders or the SBA of their 'right to control' property" and instead alleged a scheme "whose object was money itself"); *United States v. Smith,* 2024 WL 4545904, at *4 (W.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* 2024 WL 4545170 (W.D.N.Y. Oct. 22, 2024) (denying defendant's motion contending indictment charging wire fraud violations for PPP

and EIDL fraud should be dismissed due to failure to allege required specific intent to harm property, as indictment sufficiently alleged that the object of defendant's fraud was money and property belonging to the financial lenders and the SBA, which he sought to obtain or obtained through false pretenses and misrepresentations); *United States v. Sheppard*, 2024 WL 2815278, at *15 (S.D. Fla. June 3, 2024) (rejecting defendant's argument that his wire fraud convictions cannot be sustained based on a harm to the SBA because any harm that could have been suffered by the SBA was not to a "traditional property interest," and concluding that the money defendant obtained through EIDL loan fraud fell firmly within the wire fraud statute). This motion should be similarly denied, as in the context of EIDL funding, "money (obtained from loan proceeds) is not only a traditional property interest, it is squarely covered by 13 U.S.C. § 1343's text which covers 'obtaining *money* or property.'" *United States v. Sheppard*, 2024 WL 2815278, at *17 (S.D. Fla. June 3, 2024) (emphasis in original).

Similarly, the Defense argument that attempts to graft the predominantly civil concept of "fraud in the inducement" onto a scheme to obtain money, "the archetypal subject of federal fraud prosecutions," *United States v. Jesenik*, 2023 WL 3455638, at *2 (D. Or. May 15, 2023), falls flat. Here, although the Defense characterizes cases as "fraud in the inducement" and argues that the theory allows for absurd results, this is merely another angle to discuss schemes where the alleged object of the fraud is not a traditional property interest, albeit this time in the context of a commercial exchange. *See*, *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992) (where indictment did not allege financial loss, manufacturer had no property right under wire fraud statute for loss in control over the destination of their products after sale); *United States v. Milheiser*, 98 F.4th 935, 942 (9th Cir. 2024) (where company sold toner to businesses falsely indicating they were their normal toner supplier, court "rejected the notion that depriving an individual of accurate information alone constitutes fraud" because loss of the "right to make an informed

business decision" does not constitute loss of "something of value"). *Bruchhausen* and *Milheiser*, as well as the Defense hypothetical regarding Steph's babysitting services, involve two parties to a commercial transaction, each seeking something of value. However, given that the Indictment[4] alleges that Defendant devised a scheme to defraud for purposes of obtaining money, these cases are inapplicable here.

The Defense contends that "the SBA received exactly what they bargained for," ECF No. 114 at 13, but it is inaccurate and misleading to frame Defendant's application to receive a significant amount of federal funding through a government assistance program designed to provide low interest rate loans to disaster victims as a situation where the SBA's intention they were "bargaining" for was simply "assurances of repayment of a loan with interest." ECF No. 114 at 13. The SBA is not a private entity selling a loan product to make money on interest. To the contrary, disaster loans provided by the SBA are subsidized by the federal government, intended to provide "low interest, fixed rate loans to disaster victims." 13 C.F.R. § 123.2. The interest rate on EIDL loans is capped at four percent, and the Administration does not charge borrowers points, closing, or servicing fees on any disaster loans authorized under Section 7(b). *Id*. at §§ 123.302, 123.8. Further, to the extent that Defendant is arguing that misrepresentations about the intended use of the funds were not a "material misrepresentation," ECF No. 114 at 13, that is a mixed

---

[4] It is worth noting that in *Milheiser*, the court considered whether the evidence <u>presented at trial</u> was sufficient to establish defendants intended to injure a monetary or other traditional property interest. *Milheiser*, 98 F.4th at 942. In *Bruchhausen*, the defendant argued after a bench trial that the indictment was insufficient as a matter of law, as the indictment did not include any allegation of financial loss. *Bruchhausen*, 977 F.2d at 467. The procedural posture here, on a pre-trial motion is different and requires the Court accept the facts in the Indictment as pled.

UNITED STATES' RESPONSE TO MOTION TO DISMISS (ECF No. 114) - 8

question of fact and law that is not appropriate for disposition under Rule 12. *See generally, United States v. Serv. Deli Inc.,* 151 F.3d 938, 941 (9th Cir. 1998) (citing *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450 (1976) ("[W]hether a false statement is material to an agency decision is a mixed question of fact and law typically resolved by juries."). Here, Defendant did not negotiate and enter into a contract to perform some service for the United States. He asked the government for $500,000 with the representation that he would use the funds to alleviate the economic injury to his business caused by the pandemic, and the ancillary interest rate on that money does not somehow convert the money into some type of non-traditional property interest or the loan agreement into some type of contract for services akin to the cases cited by the Defense.

Further, Defendant's attempt to frame the EIDL as a civil contract that cannot result in criminal liability if the loan is paid back, ECF No. 114 at 4, 13, is not supported by the law. *See, e.g., United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020)("Intent to repay… is not a defense to wire fraud."); *United States v. Harris*, 2022 WL 17741034, at *4–5 (E.D. Ky. Dec. 13, 2022) (concluding that in the context of a scheme to deprive the SBA of EIDL funding, a defendant's intention to repay loan money is irrelevant for purposes of proving wire fraud given that the government does not need to show that the victim was *actually* deprived of money).

### III. Conclusion

Defendant made false representations in order to receive federal funding during a time of national crisis. Specifically, Defendant received $499,900.00 in U.S. currency—*i.e.*, "money," a traditional property interest—based upon false and fraudulent representations, pretenses, and promises that the funds would be used

//
//
//
//

1 | solely as working capital for Defendant's business. The resulting charged crimes are
2 | sufficiently stated in the Indictment. Defendant's motion to dismiss should be
3 | denied.
4 |     Dated this 22nd day of January, 2025.

Respectfully submitted,

VANESSA WALDREF
United States Attorney

*/s/ Frieda K. Zimmerman*
Frieda K. Zimmerman
Jeremy J. Kelley
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to noticed counsel.

/s/ *Frieda K. Zimmerman*
Frieda K. Zimmerman
Jeremy J. Kelley
Assistant United States Attorney