Nick Mirr
Federal Defenders of Eastern Washington and Idaho
306 E. Chestnut Ave.
Yakima, Washington 98901
509.248.8920
Attorney for Andrei Stephanovich Borgheriu

United States District Court
Eastern District of Washington
Honorable Stanley A. Bastian

| | |
|---|---|
| United States,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Andrei Stephanovich Borgheriu,<br><br>　　　　　Defendant. | No. 4:22-CR-6040-SAB<br><br>Reply RE: Motion to Dismiss Counts 1 and 2 and Motion for Miscellaneous Relief[1]<br><br>February 10, 2025 – 9:30 a.m.<br>Richland, WA —With Argument |

---

[1] The opening brief was inadvertently styled as a motion to dismiss the entire indictment. ECF No. 114. The reply has been edited to reflect Mr. Borgheriu is moving to dismiss only Counts 1 and 2.

## I. Introduction

In its response, the government makes several arguments in an effort to save Counts 1 and 2 of the indictment from being dismissed. First, it argues that the motion is untimely. Second, the government argues that Mr. Borgheriu did indeed intend to defraud the SBA of a cognizable property interest—money. Therefore, they argue, the conduct falls within the ambit of the wire fraud statute. Each of the government's positions is incorrect and Mr. Borgheriu will address each in turn.

## II. Argument

A. **The Motion to Dismiss Counts One and Two is timely.**

As an initial matter, the government argues that Mr. Borgheriu's motion is untimely.[2] It cites for support several scheduling orders that have been filed in this case and notes that because the motion attacks the sufficiency of the indictment, it could have been filed previously.[3] This argument, however, ignores that this case was reassigned after Judge Dimke recused herself in January of 2024.[4] After her recusal and the subsequent reassignment of the case, no further scheduling order was published that listed an expired pretrial motions deadline. Indeed, most recently this Court granted defense's motion to continue on August 28, 2024, over the government's

---

[2] ECF No. 117 at 4.
[3] *Id*.
[4] ECF Nos. 81 and 82.

Reply
– 1 –

objection.[5] In defense's motion, counsel requested the Court "re-set[] all applicable pretrial dates."[6] In its order, the Court set only a deadline for trial briefs, *voir dire*, jury instructions, and other trial documents and was silent as to the issue of pretrial deadlines.[7] In the absence of a specific deadline, defense counsel takes the position that the Rules of Criminal Procedure apply, which specifically state that "[i]f the court does not set [a deadline for pretrial motions], the deadline is the start of trial."[8]

Here, defense counsel did not wait until the start of trial to file its motion. Rather, the motion was filed roughly three- and one-half weeks prior to trial and the government had ample time to draft a response.[9] Further, there is no unfair surprise as the defense filed this motion only after reviewing similar, recent pleadings in *U.S. v. Hilderbrand*, a case involving the same government counsel.[10] The response briefing in each case is remarkably similar. Further, the issue has taken on greater significance

---

[5] ECF No. 109.
[6] ECF No. 107.
[7] ECF No. 109.
[8] Fed. R. Crim. P. 12(c)(1). Additionally, should the Court find that the motion was untimely, the Rules nonetheless permit the court to "consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Here, as this case was most recently continued approximately four months ago, additional discovery has been provided in the interim, and there is no undue surprise on the part of the government, there is simply no reason to disallow further motion practice.
[9] *Contrast* ECF No. 94, *Supplemental Motion to Exclude Testimony of Ms. Janet McHard* (filed 11 days before motions hearing).
[10] *See U.S. v. Hilderbrand*, 2:23-cr-00114-TOR (E.D. Wash. 2023) at ECF Nos. 86 and 99.

after the Supreme Court oral argument in *Kousisis*, which of course is long after any prior case management orders setting out deadlines for dispositive motions.[11]

Ultimately, the motion was filed in accordance with the Rules' timelines, there is no prejudice, and the motion presents important and developing legal issues that benefit from full briefing. The Court should reject the government's timeliness arguments.

B. **The government merely alleges that the SBA has been deprived of the right to control expenditure of EIDL funds after parting ways with them. This is not a cognizable, traditional property interest.**

In its response, the government argues that Mr. Borgheriu reads additional language into the indictment by identifying the SBA's interest as that to control the use of the EIDL funds after disbursement.[12] This argument, however, misstates the indictment. Indeed, the government explicitly alleges that Mr. Borgheriu "applied for and received one EIDL . . . with the intent to defraud, steal, and convert the proceeds of the EIDL loan for [his] personal use and *without intent to use the proceeds thereof for any authorized purpose*."[13] Thus, in the plain language of the indictment, the government has identified the alleged harm to the SBA in the same manner as defense

---

[11] Transcript of Oral Argument, *U.S. v. Kousisis*, No. 23-909 (Dec. 9, 2024).
[12] ECF No. 117 at 5-6.
[13] ECF No. 1 at 3 (emphasis added).

did in its motion—the harm occurred because the funds were allegedly used in an unauthorized manner.

Despite the government's assertions to the contrary, there is no alleged harm to a traditional property interest. The government does not allege that Mr. Borgheriu lacked the intent to repay the SBA, that he fabricated documents relied upon to determine the loan value, or that the SBA will somehow not recoup the loan, plus interest. There is no argument that Mr. Borgheriu was eligible for the loan and provided truthful information about his business to establish eligibility. There is only an alleged "injury" in that the SBA has been unable to dictate how the loan proceeds are being used after disbursement. This is not cognizable under the wire fraud statute.

The government relies on several non-binding cases out of New York and Florida to argue that the wire fraud statue reaches EIDL loans. The cases, however, are inapposite. In *Mansouri*, the indictment alleged that Mr. Mansouri "falsely represented revenues and cost of goods sold" by his company in his EIDL application.[14] There were no allegations regarding the downstream use of EIDL funds.

Again, in *Smith*, the alleged scheme is also materially different from the scheme alleged here.[15] Mr. Smith was alleged to have made misrepresentations about "the dates he was in business, the number of employees he employed, his amount of

---

[14] *U.S. v. Mansouri*, 2023 WL 8430239 at *2 (W.D.N.Y. Dec. 5, 2023).
[15] *U.S. v. Smith*, 2024 WL 4545904 (W.D.N.Y. Aug. 29, 2024).

monthly payroll, his revenue, his cost of goods sold, or a combination of the above" in applications for PPP and EIDL loans.[16] Again, conspicuously absent from *Smith* are any allegations that downstream use of the EIDL funds was a basis for prosecution.

*Sheppard*, the final case the government relies on, while superficially similar to Mr. Borgheriu's case, again relies on disparate and inapposite reasoning.[17] There, Mr. Sheppard was alleged to have "submitted false and fraudulent" PPP and EIDL applications to the SBA in which he "forged signatures of other persons for certain documents."[18] The court did not even "reach the question of whether [the] SBA was harmed as to regulatory interests" regarding the use of the EIDL after finding the convictions could be sustained "under a banks-as-victims theory."[19]

All three of these cases are inapplicable to Mr. Borgheriu's case because they involve allegations of fraud of a completely different nature. In each of the three cases relied upon by the government, the schemes involved lies about the business itself or fabrication of business records used in the application process that impacted their eligibility for funding. Not so with Mr. Borgheriu. Indeed, nowhere does the government allege that Mr. Borgheriu falsified records or misled the SBA about the state of his business. There is no allegation they were deceived about any material facts

---

[16] *Id.* at *1.
[17] *U.S. v. Sheppard*, 2024 WL 2815278 (S.D. Fla. June 3, 2024).
[18] *Id* at *1.
[19] *Id.* at *18. That theory is not included in the indictment in this case.

surrounding the business itself. The only allegation here is that Mr. Borgheriu's downstream use of the funds was outside the SBA's regulatory objectives.

Similarly, the government's attempts to distinguish *Bruchhausen*, *Milheiser*, and the defense's "Steph" hypothetical overlooks critical points of the analyses in those cases. Specifically, the government argues *Bruchhausen* and *Milheiser* are distinguishable from the instant case by asserting that the SBA was not engaged in a commercial transaction or "seeking something of value" from Mr. Borgheriu.[20] Not only is this inaccurate, but it identifies a distinction without a difference. In *Milheiser*, false representations were made to customers that specifically induced them to make purchases, and part way with money in exchange for goods.[21] In *Bruchhausen*, false representations were made to manufacturers about the destination of their products that they specifically relied on in making the deal and that caused them to part ways with their property in exchange for money.[22] Money and goods are certainly "traditional property interests." However, the mere fact that traditional property interests were involved in the bargains in *Milheiser* and *Bruchhausen* there did not simultaneously convert the *affected interests* into a traditional property interest. Again, there is no dispute that money has changed hands here. But merely because money has

---

[20] ECF No. 117 at 7-8.
[21] *U.S. v. Milheiser*, 98 F. 4th 935, 938 (9th Cir. 2024).
[22] *U.S. v. Bruchhausen*, 977 F.2d 464, 466 (9th Cir. 1992).

changed hands, it does not mean fraud has occurred.[23] The misrepresentation must have gone to "something essential to the bargain itself."[24]

Here, the SBA did indeed part ways with money, a traditional property interest. However, they did so in exchange for a promise of repayment with interest. The mere fact that they also relied on an ancillary promise of how that money would be spent *in the future and with no retained authority over the funds* does not mean there has been any injury to a traditional property interest, despite the SBA parting ways with money. Even if they would not have entered the bargain without that promise, it does not convert their downstream, regulatory interest into a traditional property interest.[25] The indictment explicitly fails to allege any scheme by Mr. Borgheriu to default on the loan or fail to make payments. Accordingly, there is no cognizable injury to a traditional property interest here.

The government attempts to shift the essentials of the bargain and bolster its position by pointing out that the SBA offered low-interest loans to further their interest in "alleviat[ing] economic injury to [Mr. Borgheriu's] business caused by the pandemic."[26] For some reason, the government contends, because the SBA didn't

---

[23] *Milheiser*, 98 F. 4th at 942-43.
[24] *Id*. at 943.
[25] *See Bruchhausen*, 977 F.3d at 467-68 (noting that even if the manufacturers would not have entered the bargain had they known the true destination of their products, it did not convert their interest in controlling the destination into a traditional property interest).
[26] *Id*. at 8-9.

enter a particularly lucrative contract, it necessitates a finding that there is a traditional property interest involved.[27] Not so. Again, while there may be understandable and perhaps laudable intent behind the SBA's attempt to control the downstream use of EIDL funds, it does not convert their desires as to how the money is spent into a traditional property interest.

As a final note, the government's attempts to distinguish this case from *Milheiser* and *Bruchhausen* appears related to their argument that they are not proceeding on a "fraud in the inducement" theory. It likewise falls flat. The indictment specifically alleges that, "[b]eginning no later than on or about June 29, 2021" Mr. Borgheriu had devised a scheme to obtain money from the SBA and use it for an unauthorized purpose.[28] The plain language of the indictment makes it clear, the government's theory is that Mr. Borgheriu had the intent to use EIDL funds for an "unauthorized" purpose at the time he applied for the loan and that that intent was integral to the SBA's decision to disburse the funds.[29] Defense counsel fails to see how the government can argue they are not proceeding with a fraud in the inducement theory.

---

[27] The fact the SBA charged interest at all belies the government's argument that this is a charitable act.

[28] ECF No. 1 at 3.

[29] The government's argument in its response brief raises concerns that it will attempt to argue at trial a theory of fraud that is at odds with the plain language of the indictment and may constitute a variance.

### III. Conclusion

The government has failed to allege a scheme by Mr. Borgheriu to defraud the SBA of a traditional property right, irrespective of the fact money has changed hands. Counts One and Two of the indictment must be dismissed.

Dated: January 29, 2025.

        Federal Defenders of Eastern Washington & Idaho
        Attorneys for Andrei Stephanovich Borgheriu

        <u>s/ Nick Mirr</u>
        Nick Mirr, AT0014467
        Iowa State Bar Ass'n
        306 E. Chestnut Ave.
        Yakima, Washington 98901
        t: (509) 248-8920
        nick_mirr@fd.org

### Service Certificate

I certify that on January 29, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Jeremy J. Kelley and Frieda K. Zimmerman.

        <u>s/ Nick Mirr</u>
        Nick Mirr, AT0014467
        Iowa State Bar Ass'n
        306 E. Chestnut Ave.
        Yakima, Washington 98901
        t: (509) 248-8920
        nick_mirr@fd.org