Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Frieda K. Zimmerman
Jeremy J. Kelley
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREI S. BORGHERIU<br><br>Defendant. | Case No: 4:22-CR-6040-SAB<br><br>United States' First Amended Trial Brief |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Frieda K. Zimmerman and Jeremy J. Kelley, Assistant United States Attorneys, respectfully submits the United States' First Amended Trial Brief. This brief is intended to assist the Court in following the evidence at trial, making pre-trial rulings, ruling on objections, and addressing other issues at trial. What follows is an overview of the anticipated evidence, an overview of the charges against the Defendant, and a discussion of potential issues at trial.

**I.     THE EVIDENCE**

At trial, the United States will prove beyond a reasonable doubt that the

United States' First Amended Trial Brief - 1

Defendant, ANDREI S. BORGHERIU, is guilty as charged in the Indictment (ECF No. 1). The evidence at trial will show the Defendant applied for and obtained an Economic Injury Disaster Loan (EIDL) based upon materially false representations that he would use the funds solely as working capital to alleviate economic injury caused by disaster to his trucking company, Artway Transport LLC. The evidence will show that at the time he applied for the loan, the Defendant intended to use the funds to purchase the single-family home where he was living with his wife: 1710 Sunshine Avenue, in West Richland, Washington (the "Property"). The Property is a three bedroom, two bath, residential home of about 2,000 square feet.

In order to fund that purchase, the Defendant lied to the Small Business Administration (SBA) to obtain nearly half a million dollars in EIDL proceeds when he falsely and fraudulently certified to the SBA, on his Loan Authorization and Agreement for the EIDL, that he would only use the EIDL proceeds solely as "working capital to alleviate economic injury." However, very shortly after the SBA disbursed the proceeds to Defendant, he used almost all the money to instead buy the Property, his personal residence.

At trial, the United States will present evidence explaining the SBA's EIDL program that the Defendant defrauded. Specifically, the SBA's designated witness, Raymond Brown, will provide testimony that the EIDL program, which pre-dates the Covid-19 pandemic, provided low-interest loans to small businesses affected by declared emergencies, such as the Coronavirus emergency. In order to obtain an EIDL, a qualifying business was required to submit an application to the SBA and agree in the required Loan Authorization and Agreement that the EIDL funds would be used "solely as working capital to alleviate economic injury" caused to the business by the disaster. As Raymond Brown will testify, the applicable regulations specify that working capital expenses include payroll, sick leave, production costs, and business obligations such as debts, rent, and mortgage payments. These authorized uses include expenditures necessary to alleviate the specific economic injury, like ordinary and necessary

United States' First Amended Trial Brief - 2

operating expenses, and do not include the purchase of real property. Further, as EIDL funds were not authorized to be used to expand a business, the purchase of real property was not an authorized use of the funds "to alleviate economic injury" caused by the disaster.

Brown will also testify that EIDL applications were received from the applicants through a web-based platform. During the relevant period of the charges against the Defendant, the location of the server through which all EIDL applications and supporting documents were submitted was located in Des Moines, Iowa. Funds for approved EIDLs were sent by wire from SBA's Financial Management System (FMS) to the bank account listed on the application.

The evidence at trial will show that the Property was purchased by Nikica Lacic and his wife Julijana Imamovic in early 2018. However, after a couple months of living there, Lacic and Imamovic believed the house was too large for them, and they decided to move to a different home. Imamovic knew Inna Borgheriu, Defendant's wife, through work and Inna had visited the Property previously. When the Borgherius learned that Lacic and Imamovic intended to move, the Borgherius' expressed an interest in renting the Property. In approximately July 2018, the Borgherius began to rent the Property from Lacic and his wife.

Testimony at trial will also establish that in approximately February 2021, Lacic was experiencing some health issues and decided to sell the Property to support him in retiring. Lacic, Imamovic, Defendant, and his wife met together, during which time Lacic stated that he intended to sell the house and gave the Borgherius until the end of the year to make other arrangements. Sometime after this meeting, Inna Borgheriu told Imamovic that the Borgherius were interested in buying the Property and were looking to obtain a mortgage. As will also be shown at trial, a credit report obtained by the SBA at the time Defendant applied for the EIDL corroborates that Defendant attempted to obtain a mortgage in February 2021. However, the Borgherius did not make an actual offer to buy the Property until Defendant obtained EIDL funds for his company.

United States' First Amended Trial Brief - 3

1  Instead of obtaining a mortgage to purchase the Property, Defendant obtained and used EIDL funds for the purchase. The evidence at trial will show that on August 9, 2021, the Defendant finalized his submission of EIDL Application No. 3321927753 to the SBA under the name of his business, Artway Transport LLC. As part of that process, the Defendant electronically signed a Loan Authorization and Agreement (LA&A) agreeing that he would use the proceeds of the loan solely as working capital to alleviate economic injury. The evidence at trial will also show that the Defendant agreed and certified that he would "not, without prior written consent of SBA, make any distribution of Borrower's assets . . . by way of loan, gift, bonus, or otherwise to any owner or partner or any of its employees," meaning that the Defendant agreed not to transfer the business funds to himself personally. Finally, the Defendant certified that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan."

In reliance on the false representations the Defendant made, the SBA approved the requested EIDL funding of $500,000.00 on August 12, 2021. This amount included a $100 third-party UCC handling charge that was deducted from the disbursement. On August 16, 2021, the SBA disbursed $499,900 in EIDL funding to the Artway Transport LLC bank account at Bank of America ending in 2612. Prior to receiving the $499,900 transfer of EIDL funds from the SBA, the Artway Transport LLC bank account had a balance of around $3,100. The Defendant's receipt of the EIDL proceeds via interstate wire based on his fraudulent representations is charged as Count 1 in the Indictment.

As will be presented at trial, Defendant and his wife, Inna, invited Lacic and Imamovic to the Property on August 17, 2021, the day after the EIDL funds were disbursed to Defendant's account, at which point the Borgherius said they wanted to buy the Property. Lacic offered to sell it for $455,000. However, Defendant told Lacic he had an inspection done on the Property, which found some minor issues with the home, and requested the price be lowered. The inspection had been completed that

United States' First Amended Trial Brief - 4

same day, August 17, 2021, at Defendant's request. Lacic then gave a final "take it or leave it" offer to sell the Property for $450,000, which Borgheriu accepted. Lacic did not inquire about the source of funds Borgheriu intended to use for the purchase.

Nikica Lacic's son, Daniel Lacic, was a real estate broker and agreed to draft a Residential Purchase and Sale Agreement for Defendant's purchase of the Property. That same day, August 17, 2021, Daniel Lacic reached out to Ticor Title to set up escrow for the transaction. Defendant and Lacic signed the Residential Purchase and Sale Agreement the next day, August 18, 2021, two days after the EIDL funds were disbursed to Defendant's business account.

Pursuant to the escrow agreement, on September 1, 2021, the Defendant sent a wire transfer from the Artway Transport LLC's Bank of America Account ending in 2612 to Ticor Title in the amount of $450,282.73. This use of the wires as part of the Defendant's fraudulent scheme is charged as Count 2 in the Indictment. The Defendant's cash purchase of the residence was originally scheduled to close on September 6, 2021, but ultimately closed on September 2, 2021.

Records from the Artway Transport, LLC, Bank of America account ending in 2612 show the disbursement of $499,900.00 in EIDL funding from the SBA on August 16, 2021. The beginning balance in that account in August of 2021 was $6,343.91. On September 1, 2021, bank statements show Defendant wiring $450,282.73 from that account to Ticor Title for purchase of the property. Account records also show that after the EIDL funding was disbursed, Defendant made several ATM withdrawals of several hundred dollars, as well as Facebook and CashApp payments to his wife and daughter totaling several thousand dollars. These documents show that almost all of the $499,900 in EIDL funds disbursed to Defendant was not used "solely as working capital" as he falsely promised the SBA, but instead it was used to purchase a residential property, for cash transfers to his family members, and to make personal purchases.

Defendant was Indicted on September 8, 2022. On September 9, 2022, Defendant was arrested at the Property. During the drive back to Spokane, he was

United States' First Amended Trial Brief - 5

advised of his *Miranda* rights, waived them, and engaged in a voluntary interview with Special Agent Christian Parker. This interview was recorded. During the interview, Defendant admitted to obtaining the EIDL funds and using them to purchase his home. Defendant contended 40% of his home was used for business purposes and that a woman from the SBA in "Washington DC" told him that if he was renting an office, he could buy the office with EIDL funds and that if the office was in his home, he could buy his home with the EIDL funds.

The United States will present testimony from Raymond Brown that such uses of EIDL funds are not permissible under the terms of the program, particularly the commitment to use the EIDL funds "solely as working capital" for a business. Further, the United States has identified from the notes in the EIDL file that the only person from the SBA to have actually spoken with Defendant about the EIDL was Guelita Pericles, a former SBA contractor, who called Defendant to confirm his identity.[1] Pericles will testify that she worked for the SBA for approximately two years processing EIDL applications. Pericles did not recall speaking to Defendant about his application, but said that she would never tell an applicant that it was within EIDL program rules to purchase property or a house to work out of, and that any such notion would be "crazy."

The evidence at trial will show that Defendant had expressed interest in purchasing the Property prior to applying for EIDL funding. The evidence will further show that the Defendant did not use the EIDL funds as working capital for Artway Transport, LLC, or for any business expenses, and instead used the EIDL funds to purchase the Property shortly after securing the ill-gotten funds. In addition to the evidence discussed above, the United States will present evidence from Defendant's tax filings that show he did not claim the Property as a business property after its purchase.

Consequently, the evidence will conclusively show that the Defendant made false

---

[1] Pericles also exchanged emails with Defendant, none of which discuss the manner that the EIDL funds can be used.

United States' First Amended Trial Brief - 6

and fraudulent representations about his intent to use the funds as working capital, which representations induced the SBA to provide him with the funds. The evidence will show that the Defendant made these false and fraudulent representations with the intent to defraud and that they in fact resulted in defrauding the SBA EIDL program of $500,000.00.

The witnesses through which the United States intends to introduce this evidence include case agents Special Agent Christian Parker with the Federal Bureau of Investigation, Special Agent Alex Meusburger with the U.S. Small Business Administration Office of Inspector General, SBA Supervisory Attorney Raymond Brown, Nikica Lacic, Julijana Imamovic, Daniel Lacic, Dylan Straight, Guelita Pericles, Erick Simmons, and as may be necessary, records custodians for Bank of America, Fidelity National Financial, Ticor Title, and the SBA.

## II.    THE CHARGES

The Defendant was charged in the Indictment in Count 1 and Count 2 with Wire Fraud, in violation of 18 U.S.C. § 1343, and charged in Count 3 with one count of Submitting False, Fictious, or Fraudulent Claims, in violation of 18 U.S.C. § 287 (ECF No. 1). Count 1 relates to the interstate electronic funds transfer of $499,900 on August 16, 2021, from the SBA to the Defendant's Artway Transport LLC Bank of America bank account ending in 2612 in the Eastern District of Washington. Count 2 relates to the interstate wiring of $450,282.73 from that same bank account controlled by the Defendant in the Eastern District of Washington to the Ticor Title company bank account ending in 5226 with US Bank in Westminster, California.

The elements of Wire Fraud are:

(1) The Defendant knowingly participated, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. Deceitful statements or half-truths may constitute false or fraudulent representations;

United States' First Amended Trial Brief - 7

 (2) The representations made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

 (3) The Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

 (4) The Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

18 U.S.C. § 1343; Ninth Circuit Model Criminal Jury Instructions § 15.35.

  A "scheme to defraud" or a "scheme to obtain money or funds" means any deliberate plan of action designed to deceive and cheat another person. *See, e.g.*, *United States v. Miller,* 953 F.3d 1095, 1103 (9th Cir. 2020). A defendant's actions "can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved." *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003) (*quoting United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981)). If based on false statements, the scheme to defraud can be based on deceptive or misleading statements, false statements and half-truths, or omitted and non-disclosed facts, as long as the statements or omissions are material. *See Woods*, 335 F.3d at 997–1000. "Deceitful statements of half-truths or the concealment of material facts is actual fraud under the statute." *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979); *see also United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980) ("The fraudulent scheme need not be one which includes an affirmative misrepresentation of fact, since it is only necessary for the government to prove that the scheme was calculated to deceive persons of ordinary prudence."). A statement or omission is material if it has "the natural tendency to influence or is capable of influencing another's decisions." *United States v. Halbert*, 712 F.2d 388, 390 (9th Cir. 1983).

  The specific intent required of each charge is the intent to deceive and cheat. *United States v. Miller,* 953 F.3d 1095, 1103 (9th Cir. 2020). "The government sustains its burden if it shows beyond a reasonable doubt either: (1) that the defendants

United States' First Amended Trial Brief - 8

knowingly made false representations or (2) that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." *Beecroft*, 608 F.2d at 757 (*citing Irwin v. United States,* 338 F.2d 770, 773 (9th Cir. 1964)). "Intent need not be established by direct evidence, but may be inferred from the defendant's statements and conduct." *Id.*; *see also United States v. Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992) ("It is often difficult to prove fraudulent intent by direct evidence and it must be inferred in such cases from a pattern of conduct or a series of acts, aptly designated as badges of fraud." (*quoting United States v. Kroh*, 573 F.2d 1382, 1386 (10th Cir. 1978)).

Finally, with regard to the interstate wiring element, "[t]he defendant need not personally have mailed the letter or made the telephone call; the offense [of mail fraud or wire fraud] may be established where one acts with the knowledge that the prohibited actions will follow in the ordinary course of business or where the prohibited acts can reasonably be foreseen." *Lothian*, 976 F.2d at 1262. Here, the evidence will show that the Defendant caused the use of interstate communications, first a wire transfer from Virginia to the Eastern District of Washington and second a wire transfer from the Eastern District of Washington to Westminster, California.

Count 3 relates to the false statements and representations the Defendant made in applying for the EIDL. Those statements then induced the SBA to disburse $500,000.00 in EIDL funds to the Defendant. The elements of this count are:

(1) The defendant made or presented a claim against the United States Small Business Administration;

(2) the claim was fraudulent;

(3) the fraudulent matter was material; that is, it had a natural tendency to influence, or was capable of influencing, the United States Small Business Administration to part with money;

(4) the defendant knew the claim was fraudulent at the time he made or presented the claim; and

(5) the defendant acted with the intent to defraud, that is, the intent to deceive

United States' First Amended Trial Brief - 9

and cheat.

18 U.S.C. § 287; 7th Cir. Crim. Jury Instr. § 287 (2023) (including the element of intent to defraud, but not materiality); 8th Cir. Crim. Jury Instr. 6.18.287 (2021) (including materiality, but not the intent to defraud); 5th Cir. Crim. Jury Instr. 2.14 (including materiality, but not the intent to defraud) (2019). The Ninth Circuit has not published a model jury instruction for § 287. The Ninth Circuit has never affirmatively held that materiality is an element of the offense, but it has raised concerns that it may be an element under Supreme Court decisions looking at other fraud statutes. *See United States v. Taylor*, 66 F.3d 254, 255 (9th Cir. 1995); *United States v. St. Luke's Subacute Care Hosp., Inc.*, 178 F. App'x 711, 713 (unpub.) (9th Cir. 2006). In an abundance of caution in this matter, and because the United States must prove materiality for the Wire Fraud counts anyway, the United States asks the Court to include a materiality element for this trial, but does not concede that it is required under the current state of Ninth Circuit case law.

Because the United States is proceeding on a theory that the Defendant submitted a fraudulent claim to induce payment of EIDL funds, rather than submitting only a false or fictious claim, the United States also requests, in an abundance of caution, that the Court include as an element that the Defendant acted with the intent to defraud. *See United States v. Jackson*, 757 Fed. Appx. 547, 550 (9th Cir. 2018) (holding that where the government proceeds only a theory of false or fictitious claims, as opposed to fraudulent, the defendant need only have acted knowingly not willfully or with intent to defraud (*citing United States v. Milton*, 602 F.2d 231, 233 (9th Cir. 1979)).

**III.    STIPULATIONS AND AGREEMENTS**

**A. The Parties' Stipulations**

The parties have agreed to the authenticity and applicable business records hearsay exception for a number of government and defense exhibits, which stipulation will be filed separately. Thos stipulations only relate to the authenticity and hearsay exceptions for the records, and the parties may still object on grounds of relevancy or

United States' First Amended Trial Brief - 10

otherwise to their admission.

The parties have also stipulated as a factual matter as to Counts 1 and 2 that an interstate wire was used, satisfying one element of each charge for which the United States does not intend to call relevant records custodians to testify about the use of wires. The United States will request to read the stipulation to the jury at the close of its case, before resting.

### B. Demonstrative Transcription of Audio Recording

The United States intends to introduce at trial part of the recorded interview of Defendant following his arrest and while he was being transported to Spokane. The United States intends to offer the first 21 minutes and 6 seconds of the recording, at which point the conversation shifts from factual matters to discussion of how the case may or may not proceed for Defendant. The Defense has been informed of the United States' intent to play this portion at trial and has indicated no objections.

In concert with playing this audio evidence, the United States plans to circulate to the jury a demonstrative transcript of the recording to assist them in understanding the conversation. The recording includes road noise, which makes it more difficult to understand without assistance of a transcript. The demonstrative transcript for this portion of the recording has been reviewed and revised by the Defense and the parties jointly agree to its use by the jury when they listen to the audio during trial. As the transcripts are not evidence themselves, the United States intends to collect the hard copy transcripts after the audio finishes.

The United States also requests, prior to the audio being played and the use of the transcripts, that the Court instruct the jury as set out in pattern instruction 2.6:

> You are about to hear a recording that has been received in evidence. Each of you has been given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you hear something different from what appears in the transcript, what you hear is controlling. After the recording has been played, the transcript will be taken from you.

Should the jury wish to hear the audio again on deliberation in the case, the

United States' First Amended Trial Brief - 11

United States requests that the jury be brought back into the courtroom where the audio can be played again in open court. The United States further requests that during such playback, the jury can again be afforded use of the demonstrative transcript.

### IV. POTENTIAL ISSUES AT TRIAL

The Court has already heard and ruled on a number of issues pre-trial, including the admission of testimony by the designated witness for the SBA, Raymond Brown. The United States here lists additional issues that it anticipates may arise at trial, to assist the Court in ruling on those matters, should they appear.

#### A. Evidence of repayment of the EIDL loan is not relevant

The Defendant may attempt to offer into evidence that he has paid or intends to pay back the EIDL funds disbursed to him. Such testimony is not relevant and admissible because "[i]ntent to repay . . . is not a defense to wire fraud." *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020); *see also United States v. Sarfo*, 2024 WL 4169227 (D. Nev. Sept. 12, 2024) (applying Miller to a fraudulent EIDL loan and concluding "defendants cannot offer arguments or evidence of intent or subsequent acts to repay the loan"). If the Defendant attempts to offer any evidence or argument that he intends to repay the EIDL, the United States will object as to relevance.

#### B. Statements of Inna Borgheriu

The United States intends to offer in evidence testimony of Julijana Imamovic that the Defendant's wife, Inna Borgheriu, said the Borgherius were attempting to obtain a mortgage to purchase the Property. Inna Borgheriu's statements are admissible on two distinct evidentiary bases.

First, Inna Borgheriu's statements, made in furtherance of the Borgherius' attempt to purchase the Property, are co-conspiratorial statements admissible under Federal Rule of Evidence 801(d)(2)(E). As the proponent of the statement, the United States must show the existence of a conspiracy, the participation in the conspiracy of both the declarant and the Defendant, and that the statements made by the declarant were in furtherance of the conspiracy. *See, e.g., United States v. Peralta*, 941 F.2d

United States' First Amended Trial Brief - 12

1003, 1005–06 (9th Cir. 1991). The Indictment need not allege a conspiracy for such statements to be admissible against the Defendant. *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir. 1988) *bverruled on other grounds*, People of Territory of Guam v. Ignacio, 10 F.3d 608, 612 n.2 (9th Cir. 1993). Further, the conspiracy need not be of an unlawful nature, but simply some "common enterprise" between the defendant and the declarant, such that the declarant "was acting in his capacity as an agent of the defendant when he uttered the statements sought to be admitted." *Id.* at 1399. As such, "Rule 801(d)(2)(E) applies to statements made during the course and in furtherance of any enterprise, whether legal or illegal, in which the declarant and the defendant jointly participated." *Id.* at 1400.

As Imamovic and Lacic will testify, the Defendant and his wife both were present when Lacic informed them of his intent to sell the property within a year. Imamovic will also testify that after the four met, she had a conversation with Inna Borgheiru in which Ms. Borgheriu stated they wanted to purchase the Property and were looking for a mortgage. Lacic and Imamovic will also testify that they met with both the Defendant and Inna Borgheiru in August 2021 to discuss and finalize the sale of the Property. Although she was not a signatory on the purchase agreement, Inna Borgheriu further participated in the scheme to purchase the Property when she signed a Quit Claim deed following its purchase from Lacic and Imamovic divesting any of her own interest in the Property to Defendant. As such, there was a common enterprise between Inna Borgheriu and the Defendant to purchase the Property. Inna Borgheriu's statements to one of the sellers, Imamovic, that the Borgherius were looking for funding to make the purchase, was in furtherance of that common enterprise and were made by Inna Borgheriu acting in her capacity as an agent for the Defendant and expressing their joint intent to seek out a mortgage to fund the purchase.

Second, Inna Borgheriu's statements are admissible as a hearsay exception because they are statements about a then-existing mental condition under Federal Rule of Evidence 803(3). Out of court statements "of the declarant's then-existing state of

United States' First Amended Trial Brief - 13

mind (such as motive, intent, or plan)" are admissible, but not statements "of memory or belief to prove the fact remember or believed." Fed. R. Evid. 803(3). Here, the United States will offer Inna Borgheriu's statement expressing the Borgherius' intent or plan to obtain a mortgage to purchase the Property. None of that statements relate to memory or belief of facts, simply the intent or plan of the Borgherius, that is their then-existing state of mind, regarding the Property. As such, the statements are admissible through the testimony of Juljiana Imamovic under the exception to hearsay in addition to and separately from the fact that they are also con-conspiratorial statements.

### C. Credit Report

In seeking stipulations in this case, the Defense has indicated it does not believe that an SBA report setting out the results of a credit report run on the Defendant as a standard course of action in reviewing his EIDL application can be properly admitted as a business record of the SBA. The credit report is admissible as an adopted business record of the SBA, even though the SBA did not itself create the credit report.

The Ninth Circuit has upheld the admission of "business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy." *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993); *see also* Air *Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342 (Fed. Cir. 1999) (collecting circuit court cases and finding that they "generally held that a document prepared by a third party is properly admitted as part of the business entity's records if the business integrated the document into its records and relied upon it."). As such, "records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records." *MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998).

Here, as Raymond Brown will testify, credit reports were kept in the regular course of SBA's business (in fact, they were obtained for each EIDL applicant), they

United States' First Amended Trial Brief - 14

are relied upon by the SBA in making decisions on EIDL applications, and the SBA has a substantial interest in the accuracy of the credit reports. The SBA integrates the credit reports into its own records and relies upon them in evaluating EIDL applications. Further, credit reports are reliable as they do not rely upon subjective input, but merely report the objective financial data about a person as well as inquiries into their credit from other companies; there is no opportunity or incentive in this process for anyone to intentionally introduce false information into the report.[2] Thus, under Rule 803(6) the credit reports are admissible because testimony will establish the required showings that the United States must make and the Defendant cannot show "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

### D. Statements of Defense Witnesses

The Defense provided the government with copies of marked defense exhibits on January 27, 2025, the deadline for production of reciprocal discovery. The Defense did not produce any statements from witnesses it intends to call at trial.

Prior statements of defense witnesses are required to be produced under the Rule 26.2 and the Jencks Act. *See* Fed. R. Crim. P. 26.2 Advisory Committee notes ("The rule . . . is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act, 18 U.S.C. § 3500 . . . ."). In Local Rule 16(b), the Court "encourages early disclosure by the defense of *United States v. Nobles*, 422 U.S. 225 (1975) statements (Fed. R. Crim. P. 26.2) when the reasons for withholding such statements are not implicated." As the United States has not been provided with early Jencks Act material, should Defendant intend to call witnesses in his case, the government specifically seeks

---

[2] *See generally* https://www.consumerfinance.gov/ask-cfpb/what-is-a-credit-report-en-309/

United States' First Amended Trial Brief - 15

prior statements of such witnesses pursuant to Fed. R. Crim. P. 26.2 and will request an appropriate recess or other remedy should such not be produced until the witness has begun testifying in order to allow the United States sufficient time to review such material.

### E. Issues Related to Closing Arguments

The Defendant may call witnesses and the United States may comment on their failure to do so. "A prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify." *United States v. Cabrera*, 201 F.3d 1243, 1249 (9th Cir. 2000) (citing cases). If a defendant does testify, a prosecutor may characterize the defendant's testimony as false. *Id.* at 1250.

Here, the Defendant's factual theory of the case appears to be centered on the assertion that the defendant lacked the intent to defraud and truly believed he could use the EIDL funds to purchase his personal residence. The only individual who can testify as to the Defendant's subjective intent is the Defendant himself. The United States will object to any testimony offered by other witnesses that speculates on the Defendant's intent at the time or that is an attempt to offer the Defendant's own self-serving hearsay about his intent into evidence. If the Defendant takes the stand to testify as to his intent at the time, the United States may fully cross-examine him as to that intent and any notice he was on that he could not use the funds as he did. The government may also, in closing, characterize his testimony as false and inconsistent with other evidence.

If the Defense, through evidence, argument, or cross-examination, attempts to paint a factual picture that the Defendant's cash purchase of the single-family home he was then renting with his wife was a legitimate business expense under the terms of the EIDL, the United States has every right and ability to point out to the jury the absence of evidence supporting this theory. Pointing out lack of evidence contradicting the United States' case does not shift the burden to the Defendant.

United States' First Amended Trial Brief - 16

### F. Deliberate Ignorance/Willful Blindness

As mentioned above, the Defendant's factual theory of the case appears to be centered on the assertion that the defendant lacked the intent to defraud and truly believed he could use the EIDL funds to purchase his personal residence, and consequently did not knowingly make any misrepresentations to the SBA. However, "knowingly" in criminal statutes "is not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it." *United States v. Jewell*, 532 F.2d 697, 702 (9th Cir. 1976). In situations where "the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge," an instruction regarding willful blindness (also termed deliberate ignorance) can be appropriate. *United States v. Yi*, 704 F.3d 800, 804–05 (9th Cir. 2013); *see also, United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007). "Deliberate ignorance contains two prongs: (1) a subjective belief that there is a high probability a fact exists; and (2) deliberate actions taken to avoid learning the truth." *United States v. Yi*, 704 F.3d at 804–05, *citing Global–Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 2060, 2070 (2011). To the extent the evidence presented at trial is such that a jury could rationally find willful blindness on the part of the Defendant even though it has rejected evidence of actual knowledge, a jury instruction regarding willful blindness would be appropriate. The United States has submitted separately a proposed instruction.

### G. Witness Exclusion and Case Agent Designation

The United States will move for the exclusion of all witnesses until their testimony has been completed, pursuant to Federal Rule of Evidence 615. The United States will further move that Special Agents Christian Parker and Alex Meusburger be designated as the case agents and thus exempt from the exclusion order. *See United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1984) ("[W]e find that the district court

//

//

United States' First Amended Trial Brief - 17

did not abuse its discretion in allowing the case agent to remain at the prosecutor's table. . . . The case agent was exempt from sequestration.").

Respectfully Submitted this 3rd day of February, 2025.

        Vanessa R. Waldref
        United States Attorney

        *s/Frieda K. Zimmerman*
        Frieda K. Zimmerman
        Jeremy J. Kelley
        Assistant United States Attorneys
        United States Attorney's Office for the
        Eastern District of Washington
        920 W. Riverside Avenue, Suite 340
        Post Office Box 1494
        Spokane, WA 99201-1494
        Telephone: (509) 353-2767

*Counsel for the United States of America*

United States' First Amended Trial Brief - 18

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

*s/ Frieda K. Zimmerman*
Frieda K. Zimmerman
Assistant United States Attorney

United States' First Amended Trial Brief - 19